UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-60279-CR-ZLOCH/SELTZER(S)(S)

UNITED STATES OF AMERICA,

    Plaintiff,

       v.

SAMUEL BURSTYN,

    Defendant.

_____/

## GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDUM

Comes now the United States and hereby files this response to defendant Samuel Burstyn's

Sentencing Memorandum.

I. **Introduction**

The Defendant, a lawyer who has been convicted of obstruction of justice, argues that "no

purpose would be served in sending [him] back to prison" as required by the Federal Sentencing

Guidelines (Guidelines) which, indisputably, require him to be sentenced to five years incarceration.

Guidelines § 2X3.1(a)(3)(A); (Defendant's Memorandum at p.1). However, the following

purposes would be served by the Guidelines's mandated five years of imprisonment: providing just

punishment for the offense; deterring criminal conduct by other lawyers; and protecting the public

from further crimes the defendant could commit 18 U.S.C. §3553(a).

The defendant seeks to avoid incarceration entirely and suggests that the Court should single

him out for special treatment because the "community at large will be deprived of a remarkably well-

loved and respected man. . . ." were he to be incarcerated. (Defendant's Memorandum at page 1.).



However, most criminal defendants have families and members of the community that love, respect and depend on them; defendant has failed to show any compelling reason for the Court to depart from the Guidelines and afford him special treatment.

## II. The Offense Of Conviction And The Guideline Calculations

The agreed upon factual basis for the defendant's guilty plea is as follows:[1]

> If this case were to proceed to trial, the government would establish beyond a reasonable doubt, through testimonial and documentary evidence, that the defendant conspired with Jeffrey and David Tobin to obstruct the due administration of justice by corruptly endeavoring to influence, obstruct and impede the Federal Grand Jury in the Southern District of Florida in violation of Title 18, United States Code, Section 371, as charged in Count Three Overt Act "F".

> The defendant Samuel Burstyn was an attorney licensed to practice law in the State of Florida and was a long time friend of Jeffrey Tobin and David Tobin (the Tobins).  As a result of that relationship, defendant Burstyn was aware that the Tobins were involved in the distribution of marijuana and that many of their assets were derived, either directly or indirectly, from the sale of marijuana.  Starting in April 2003, defendant Burstyn learned from the Tobins and the government that the Tobins were under investigation by a Fort Lauderdale federal grand jury.

> In October 2003, the Tobins and the defendant became aware that the grand jury was about to indict the Tobins and others on drug and money laundering charges. At that time, defendant was aware that the Tobins had substantial drug proceeds deposited in financial institutions that could be subject to forfeiture. The defendant and the  Tobins agreed that the Tobins would convert drug proceeds to a form that would enable Jeffrey Tobin to become a fugitive and to avoid the forfeiture by the government of those drug proceeds.  The defendant suggested to Jeffrey Tobin that he should purchase diamonds in order to facilitate Tobin becoming a  fugitive. The defendant made this suggestion because diamonds are easily transportable and can be sold for cash in a manner that would disguise the identity of the owner.

---

[1] The government, in presenting its arguments at sentencing is, of course, not limited to the stipulated factual basis.  This is made clear by the express terms of the Plea Agreement which provides that: "6. The Office of the United States Attorney for the Southern District of Florida reserves the right to inform the court and the probation office of all facts pertinent to the sentencing process, including all relevant information concerning the offenses, whether charged or not, as well as concerning the defendant and the defendant's background. Plea Agreement, at ¶6. (D.E. 138).

In carrying out the scheme, the defendant contacted Alan Lipton, an associate, who was owner of Diamond.Com., an Internet business involved in the purchase and sale of diamonds. During a conference call, among the Tobins, Lipton and the defendant, the defendant introduced Jeffrey Tobin to Lipton and informed Lipton that Jeffrey Tobin was a friend and a client who desired to invest in diamonds.

Jeffrey Tobin, acting under the advice and counsel previously rendered by the defendant, wire transferred $638,700 to Diamond.Com for the purpose of purchasing diamonds. Tobin, however, purchased only approximately $257,000 in diamonds and received back a portion of the funds that were originally wire transferred because a dispute over the price of the diamonds arose between Jeffrey Tobin and Alan Lipton. Thereafter, Jeffrey Tobin was, in fact, indicted and knowingly became a fugitive. During the period that Jeffrey Tobin was a fugitive, he had available the diamonds that he had purchased under the advice and counsel of the defendant. After the arrest of Jeffrey Tobin, the diamonds were forfeited to the United States pursuant to a plea agreement with the Tobins.

The above facts demonstrate that defendant is guilty of conspiring to obstruct justice in violation of Title, 18, United States Code, Section, 371.

Plea Agreement, Factual Basis (emphasis supplied) (D.E. 138).

The above facts not only show defendant's guilt of conspiring to obstruct justice in violation of Section 371, but also demonstrate beyond dispute that the defendant conspired and aided and abetted in the laundering of drug proceeds. The defendant admitted that he was "aware that the Tobins had substantial drug proceeds deposited in financial institutions that could be subject to forfeiture. The defendant and the Tobins agreed that the Tobins would convert drug proceeds to a form that would enable Jeffrey Tobin to become a fugitive and to avoid the forfeiture by the government of those drug proceeds." Plea Agreement, Factual Basis (emphasis supplied) (D.E. 138).

Thus, although the defendant agreed to plead guilty to the lesser charge of conspiracy to obstruct justice, and thereby avoid a potential 20 year sentence, the agreed upon facts show that the defendant laundered drug money for a drug dealer. See 18 U.S.C. § 1956(h). Accordingly, in

3

considering the defendant's various motions it should be recalled that the defendant-- by virtue of his plea agreement-- has already received a substantial benefit in that he has avoided a possible 20 year sentence solely based upon consideration of the agreed upon facts at the plea colloquy.

In light of these undisputed facts, the defendant's suggestion that "no purpose would be served in sending [him] back to prison" ignores the seriousness of the criminal conduct that the defendant has committed.  The defendant obstructed justice and laundered over $600, 000 in drug proceeds–he should receive the just punishment of five years incarceration as mandated by the Guidelines.

The Presentence Investigation Report (PSI), concludes that the total offense level for the defendant's obstruction of justice is 29. In accordance with applicable Guidelines, this calls for imprisonment in the range of 87 to 108 months.  However, because the statutory maximum sentence is 60 months, the defendant can only be sentenced to 60 months of incarceration.  It should also be observed that even if the defendant did not receive a two level adjustment for abuse of trust or special skill, the offense level would be 27 and the Guideline range would be 70-87 months; well over the statutory maximum of 60 months. (PSI ¶¶ 54, 57, 63,134). Thus, the length of imprisonment provided for by the Guidelines is more than reasonable in light of the defendant's admitted criminal conduct–he should not receive an even greater benefit as he now seeks from the court.

### III. Sentencing In The Eleventh Circuit After United States v. Booker

The Court in United States v. Booker, 534 U.S. 220, 125 S.Ct.738 (2005), ruled that the Guidelines are not mandatory.  Under the Booker decision the sentencing court must first correctly determine the applicable Guideline range and then has discretion to impose a sentence that is reasonable. United States v. Crawford, 407 F.3d 1174, 1178 (11th Cir. 2005); United States v. Davis,

407 F.3d 1269, 1271 (11th Cir. 2005). In imposing the sentence the court should consider the factors

set forth in 18 U.S.C. § 3553(a), but need not explicitly discuss them. United States v. Talley, 431

F.3d 784, 786 (11th Cir. 2005).

After Booker "the use of the Guidelines remains central to the sentencing process." United

States v. Talley, 431 F.3d at 787. Booker and its progeny made clear that the Guidelines are crucial

to the sentencing process in order to help further the goal of uniformity in sentencing. Id; Booker ,

125 S.Ct. at 757-760. Indeed, the Eleventh Circuit observed that when reviewing a case on appeal,

"ordinarily we would expect a sentence within the Guidelines range to be reasonable. . . . the party

who challenges the sentence bears the burden of establishing that the sentence is unreasonable. . .

" Talley, 431 F.3d at 788. (emphasis supplied).  Thus,  the numerous out of circuit district court

opinions cited by defendant (Defendant's Memorandum at 13) do not reflect the developed post

Booker decisions of the Eleventh Circuit. The government urges the Court to impose the

presumptively reasonable Guideline sentence of five years' imprisonment

## IV. The Court Should Apply A Two Level Increase For Abuse of Trust

The Probation Office correctly determined that the defendant acted as an  attorney when he

endeavored to obstruct the due administration of justice by counseling Jeffrey Tobin to flee and to

conceal over $600,000 in drug proceeds.[2] The abuse of trust adjustment applies if the defendant

abused his position in a way that significantly facilitated the commission or concealment of the

---

[2] Defendant cites only portions of the written facts submitted at the plea hearing in
support of this tenuous position that this enhancement should not apply. Again, as is set forth in
the Plea Agreement, the government has the right to inform the sentencing court and probation
office of all relevant facts concerning the  offenses committed, including additional facts relating
to the offense that the defendant has been convicted.  However, the defendant's objections
should be rejected, based solely upon  the agreed upon  factual basis for the defendant's plea of
guilty. ( Plea Agreement, Factual Basis,  D. E. 138).

5

offense. <u>United States v. Morris</u>, 286 F.3d 1291, 1295 (11th Cir. 2002).  Under this standard, attorneys who obstruct justice should receive the applicable two point upward adjustment. <u>United States v. Shenberg</u>, 89 F.3d 1461, 1477-78 (11th Cir. 1996)(attorney in the Court Broom bribery cases properly assessed two points for abuse of trust); <u>United States v. Harrington</u>, 114 F.3d 517, 519 (5th Cir. 1997) ("The integrity of our judicial system inextricably is intertwined with the integrity of our trial lawyers.  Consequently, it cannot be gainsaid that lawyers occupy a position of public trust"). Accord  <u>United States v. Atkin</u>, 107 F.3d 1213, 1219 (6th Cir. 1997).

In this case,  the incontestable facts are that the defendant was a lawyer with an attorney-client relationship with Jeffrey Tobin and David Tobin; that the defendant, during the pendency of a grand jury investigation, "agreed that the Tobins would convert drug proceeds to a form that would enable Jeffrey Tobin to become a fugitive and to avoid the forfeiture by the government of those drug proceeds;" that "[d]uring a conference call, among the Tobins, Lipton and  the defendant, the defendant introduced Jeffrey Tobin to Lipton and informed Lipton that Jeffrey Tobin was a friend and a <u>client</u> who desired to invest in diamonds;" and , that, "Jeffrey Tobin, acting under the advice and counsel previously rendered by the defendant, wire transferred $638,700 to Diamond.Com for the purpose of purchasing diamonds".   <u>Plea Agreement, Factual Basis</u> (emphasis supplied) (D.E. 138) (emphasis supplied).  These facts alone show that defendant Burstyn grossly violated the position of trust he held as a lawyer for the purpose of perverting the course of justice through criminal conduct.  Accordingly, he should receive a two point upward adjustment for abuse of trust. <u>United States v. Harrington</u>, 114 F.3d at 519

More specifically, further evidence of the offense for which the defendant pleaded guilty demonstrate the following:

6

In about April 2003, the defendant began representing Jeffrey and David Tobin in a grand jury investigation that had begun in the Southern District of Florida. The defendant received actual notice of this investigation after several grand jury subpoenas were served that required the production of records of several corporations owned by the Tobin brothers. After he made direct contact with the United States Attorney's Office, the defendant was informed that Jeffrey Tobin and David Tobin were targets of a federal grand jury investigation being conducted in Fort Lauderdale. This investigation involved possible violations of the Racketeer Influenced and Corrupt Organizations statute (RICO), Title 18, United States Code, Section 1962(d), conspiracy to distribute marijuana, in violation of Title 21, United States Code, Section 846, money laundering conspiracy, in violation to Title 18, United States Code, Section 1956, and other crimes.

Also, in April 2003, the defendant began advising Jeffrey Tobin and David Tobin in connection with the grand jury investigation. As a result of numerous meetings with the Tobin brothers, the defendant was fully aware that the two men were involved in a substantial marijuana distribution organization that had been operating for several years.

Shortly after the initial contact, the defendant notified the government that he would only represent David Tobin for the purpose of the grand jury investigation. Kenneth Kukec, Esq., who was an attorney sharing office space with the defendant, then notified the government that he would represent Jeffrey Tobin.

This division of representation was a direct result of the decision made by the defendant that Jeffrey Tobin was to become a fugitive. The defendant also determined that David Tobin would remain to face any charges because he believed that David Tobin had a reasonable chance of acquittal. Throughout the remainder of the grand jury investigation, the defendant made it clear to

the Tobin brothers that he was representing both of them even though Mr. Kukec was Jeffrey Tobin's attorney of record with the government. The defendant had several meetings with the Tobin brothers without Mr. Kukec present.

Officially, the defendant continued to represent David Tobin in matters relating to the grand jury investigation. In summer, 2003, the defendant produced David Tobin's corporate records in response to a grand jury subpoena.

In about October 2003, when it appeared that an indictment was imminent, Jeffrey Tobin informed the defendant that he had approximately $675,000 in drug proceeds deposited in bank accounts. The defendant then reiterated his advice to Jeffrey Tobin to flee from the prospective charges and conceal the drug proceeds to avoid forfeiture. The defendant further suggested to Jeffrey Tobin that he convert the drug proceeds to diamonds to facilitate his flight and to better conceal the asset from forfeiture.

In order to assist Jeffrey Tobin in obstructing justice, the defendant telephonically contacted Alan Lipton, who owned Diamond.com. The defendant placed a conference telephone call with Lipton in the presence of Jeffrey and David Tobin. During this telephone conversation, the defendant introduced Jeffrey Tobin as a friend and client who was going through a divorce. The defendant, Jeffrey Tobin and Alan Lipton discussed the purchase of a large quantity of diamonds for cash. Thereafter, Jeffrey Tobin purchased diamonds from Lipton's company. Clearly, the actions of the defendant were inextricably tied to his role as attorney for Jeffrey Tobin and David Tobin.

On January 14, 2004, the defendant represented David Tobin at a detention hearing held before Magistrate Judge Edwin G. Torres. He also represented David Tobin in the appeal to United

8

District Judge James I. Cohn and ultimately to the Court of Appeals for the Eleventh Circuit.  The defendant continued representing David Tobin until he withdrew in August 2004. Copies of the various court filings demonstrating this relationship are attached as Exhibits 1-5.  It must also be noted that on or about March 19, 2004, the defendant also represented Jeffrey Tobin at his detention hearing held in the Eastern District of New York, after attorney Kenneth Kukec was informed by the prosecutor that he was going to be a witness on an identity issue.

In support of the proposition that he did not abuse a position of trust, Burstyn cites <u>United States v. Morris</u>, 286 F.3d 1291, 1297 (11th Cir. 2002). In <u>Morris</u> the defendant was an attorney prosecuted for fraud who "did not have an attorney-client relationship with any of the victims." <u>Id</u>. In contrast, Burstyn had an attorney-client relationship with both Jeffrey Tobin and with Diamond.Com. The defendant used that relationship to obstruct justice and to launder money on behalf of a client.  The contention that the defendant's conduct does not amount to an abuse of trust is frivolous considering that all parties to this money laundering transaction were clients of the defendant.

In view of the clear evidence of defendant's substantial involvement as an attorney in conspiring to obstruct justice in the Tobin case,  the two-point enhancement for abuse of a position of trust is clearly appropriate.

## V. Defendant's Family Responsibilities Do Not Warrant A Downward Departure

Defendant asserts that his family circumstances are so extreme that the Court should give him special treatment and grant him a downward departure from the advisory Guideline sentence. Defendant is a wealthy former attorney with a long history of drug abuse and a myriad of psychological problems. Defendant has some dependents who also have serious psychological

problems. These circumstances, although tragic, do not warrant special treatment. Moreover, the defendant has substantial wealth that, if properly managed, can easily support his family.

Under the Federal Sentencing Guidelines, "family ties and responsibilities are not ordinarily relevant in determining whether a departure may be warranted." U.S.S.G. §5H1.6. In interpreting this provision, the Eleventh Circuit has ruled that theoretically a court could downwardly depart based on extreme family circumstances because the "not ordinarily relevant" language suggests that in extreme circumstances departure based on family responsibility may be warranted. United States v. Mogel, 956 F.2d 1555, 1561 (11ᵗʰ Cir. 1992). In Mogel, however, the Eleventh Circuit reversed a district court's decision to grant a downward departure based on family circumstances that were, arguably, more difficult than those in the case at bar. The court ruled that the fact that the defendant supported two minor children and her mother through a business she owned, and which could fail if she were to be imprisoned, did not warrant a downward departure. Id. In this case, although defendant Burstyn has difficult family circumstances, they are simply not so extreme as to grant him special treatment and exempt him from the normal rule that family circumstances do not warrant a downward departure. United States v. Allen, 87 F.3d 1224, 1225-6(11th Cir. 1996)(reversing a downward departure of a defendant who was the care giver for a parent with Alzheimer's and Parkinson diseases).

Contrary to his representations, the defendant has not been a bulwark of family stability. The defendant used proceeds from the financial accounts of his own children and his nieces and nephews as a conduit to facilitate a money laundering transaction as charged in Count 1 of the Second Superseding Indictment. This type of conduct certainly does not represent that of a law-abiding "patriarch" of a large family who provides a "stabilizing presence" for his children as he has

represented himself to be in his Memorandum. (Defendant's Memorandum at 22-23).   Moreover, recent problems involving domestic violence further cast doubt upon defendant's arguments in support of downward departure.

As with many defendants, the defendant in this case has unfortunate family circumstances. Both he and his family are plagued with countless psychological disorders. These conditions, even when taken in their totality and in the light most favorable to the defendant, are simply not so extreme as to warrant special treatment for this defendant.  However, when considering the severe emotional problems of the defendant and other members of his family, any assistance that the defendant could render to those family members if downward departure were granted is extremely doubtful.

**VI. Defendant's Conditions Of  Detention Do Not Warrant a Downward Departure**

Defendant seeks to lower his sentence because the government sought and was granted pretrial detention for the defendant.  This detention was upheld by the Eleventh Circuit. Now is not the  time to revisit that issue.  However, the government notes that the defendant has admitted that he obstructed justice by counseling and aiding a client to flee the jurisdiction of this Court. The government stands by its original determination that pretrial detention was appropriate.

Moreover, the defendant, while incarcerated, engaged in a pattern of prohibited conduct and continued violations of the rules at the Federal Detention Center (FDC). The defendant, using his telephone privileges at FDC, placed illegal bets on basketball games and transferred money into the accounts of other prisoners.  These facts are shown by numerous recorded conversations of the

defendant while incarcerated at FDC and other information supplied to the United States.[3]  The recordings show that the defendant placed illegal bets, in part, by using his own children.

The Eleventh Circuit has held that there are only very few circumstances which would justify a downward departure for pretrial conditions, e.g., for example being repeatedly raped or tortured by a prison guard, or being detained for five years without ever being outside,  may warrant such an extraordinary remedy. United States v. Pressley, 345 F.3d 1205, 1219 (11th Cir. 2003).   The defendant has alleged no such extraordinary circumstances.  Indeed, through the use of his wealth and position, he was able to  place bets while incarcerated at  FDC.  The defendant should have been detained; he committed illegal acts while detained; and should not now receive a reduced sentence for having been properly detained.

The court need not resolve what may become more factual disputes about the defendant's conduct while in detention. Even if the court were to assume the truth of defendant's assertions, those allegations fall far short of the type of conduct that could properly form the basis for a downward departure. One week in the Special Housing Unit, one of the defendant's litany of complaints, is not the type of inhumane treatment that should move the Court to grant a downward departure. The defendant's motion is frivolous and should be denied as such.

**VII. The Factors Under 18 U.S.C. § 3553(a) Do Not Support A Reduced Sentence**

The totality of the factors under section 3553(a) support that a sentence under the Guidelines is a reasonable sentence.  In making this evaluation, it must again be observed that the facts admitted to by the defendant in his plea to the obstruction of justice charge also would support a money

---

[3] The government orally informed defense counsel of the existence of these recordings several months ago during the course of pretrial discussions.

12

laundering charge that carries with it the possibility of 20 years in prison. By pleading guilty, under the terms of the plea agreement, the defendant substantially limited his potential sentence. Thus, the defendant stands before the court having already received a substantial benefit: he ought not now be granted even more benefits.  A five year sentence is a just punishment for the defendant's flagrant abuse of the criminal justice system.

### 1. Nature And Circumstances Of The Offense

Defendant claims that the Guideline sentence is disproportionate to the offense conduct. To place this argument in perspective, it is first useful to review how the Guideline level in this case was calculated.   By his guilty plea, Burstyn admitted that he obstructed a drug investigation that involved a substantial amount of narcotics. Consequently, his base offense level for obstruction of justice is linked to the base offense level for the underlying offense. In a drug case, the base offense level is determined by the amount of drugs involved—there is no base level for a drug offense that is not linked to an amount of drugs. See U.S.S.G. §§ 2J1.2(obstruction of justice offenses should apply the accessory after the fact guideline); 2X3.1(accessory after the fact guideline states that the base offense level of the underlying offense is used, but shall not be higher than 30); 2D1.1(base offense in a drug case includes the amount of drugs).

In an obstruction of justice prosecution related to a drug offense, the Guidelines link a defendant's sentence to the base offense level for the drug distribution. The base offense level for drug distribution includes the amount of drugs; there is no base offense level apart from the amount of drugs.  The Guidelines makes it clear that it is the base offense level for the underlying offense that is linked to the offense level for obstruction of justice.  The Fourth Circuit addressed this very issue in United States v. Cross, 371 F.3d 176, 180-81 (4th Cir.2004) and held that in an obstruction

13

of justice prosecution related to a drug offense the government need not establish the amount of drugs that the defendant knew or reasonably should have known, but need only show the amount of drugs that were, in fact, involved. Accord. United States v. Brenson, 104 F.3d 1267, 1284-1286 (11th Cir.1997); United States v. McQueen, 86 F.3d 180, 182-83 (11th Cir. 1996).

The defendant does not dispute his Guideline calculations, but rather maintains that such a sentence is not reasonable under the circumstances. Just the opposite is true. It is reasonable to measure the harm to the judicial system by the nature of the grand jury investigation that was obstructed.   In this case, that offense was drug trafficking. The defendants's obstruction enabled a drug dealer to: launder his money; flee the jurisdiction of this Court; hide from law enforcement; and otherwise corrupt the judicial process. Thus, linking the defendants's punishment to the nature of the underlying offense is reasonable and well founded, making a sentence of imprisonment of five years reasonable.

## 2. Similarly Situated Defendants

One of the key purposes of the Guidelines is to avoid sentencing disparity. This purpose is also critical under Booker and its progeny.  The avoidance of sentencing disparity is best served by following the Guidelines.  As observed by the Eleventh Circuit, "ordinarily we would expect a sentence within the Guidelines range to be reasonable. . . . the party who challenges the sentence bears the burden of establishing that the sentence is unreasonable. . . . " Talley, 431 F.3d at 788.(emphasis supplied).

However, instead of using the Guidelines, defendant inappropriately compares his sentence to prior sentences handed down against other attorney who have been sentenced in the Southern District of Florida.  These attorney were all sentenced for criminal conduct unrelated to this case and

14

by other district judges.  The historical  use of such examples, is precisely one of the reasons  that fostered the Guideline procedure calculated to foster true, rather than pseudo, uniformity in sentencing. Thus, the avoidance of sentencing disparity is fostered, not by using isolated examples of lawyers who have been found guilty of crimes, but through  the use and application of Guidelines. The defendant's Guideline sentence is a reasonable sentence that fosters uniform sentencing of similarly situated defendants.

### 3. Family Ties Do Not Warrant a Non-Custodial Sentence

As discussed above, the defendant has many unfortunate and difficult family circumstances. Indeed, most criminal defendants have compelling family issues; yet they properly do not receive the type of special treatment sought by this defendant.  Indeed, this defendant's wealth makes it far easier for him to provide for his family than most incarcerated defendants. Furthermore, defendant's domestic violence certainly does not weigh in his favor; he should not receive a lower sentence because of his family circumstances.

### 4. Deterrence Would Not Be Served By A Reduced Sentence

Defendant argues that the mere fact of his prosecution and seven months of pretrial detention has "more than sufficiently achieved [the] goal of deterrence." (Defendant's Motion at p.34).  This position is devoid of merit. The Guidelines were carefully crafted to provide a proper deterrent for criminal conduct–to place the defendant on probation would be to broadcast that lawyers may obstruct grand jury investigations and be sentenced to a misdemeanor type term of incarceration. The Court should send a clear message that attorneys convicted of obstruction of justice will not receive special treatment; but rather will be sentenced in accordance with the Guidelines as would any other defendant, absent a clear showing that the Guideline sentence is unreasonable.  Here, the defendant

15

has failed to do this.

### 5.  Defendant's Medical Condition Does Not Justify A Lower Sentence

The Federal Bureau of Prisons is fully equipped to provide adequate treatment for the defendant's medical condition. Defendant has presented no evidence to the Court that the Bureau of Prisons is not able to give defendant the prescribed course of treatment for Hepatitis C. Accordingly, this is not a basis for a variance from the Guideline sentence.

### VIII. Conclusion

Based upon the foregoing, the defendant, Samuel Burstyn should be sentenced to incarceration of sixty months and a $250,000 fine.

Respectfully submitted,

R. ALEXANDER ACOSTA
UNITED STATES ATTORNEY

BY: _____
J. BRIAN McCORMICK
ASSISTANT UNITED STATES ATTORNEY
Court I.D. #A5500084
500 East Broward Blvd., Suite 700
Fort Lauderdale, FL 33394
Telephone: (954) 356-7392
Fax: (954) 356-7230

BY: _____
MICHAEL J. DITTOE
ASSISTANT UNITED STATES ATTORNEY
Court I.D. #A5500209

16

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copies of the foregoing were mailed on this 2nd day of February, 2006, to:

Reid H. Weingarten
Evan T. Barr
Brian M. Heberlig
STEPTOE & JOHNSON LLP
1330 Connecticut Ave., N.W.
Washington, D.C. 20036-1795

   -and-

750 Seventh Ave., Ste. 1900
New York, NY 10019

Albert J. Krieger
1899 South Bayshore Dr.
Miami, FL 33133

Fred Haddad
One Financial Plaza, Ste. 2612
Fort Lauderdale, FL 33394


MICHAEL J. DITTOE
ASSISTANT U.S. ATTORNEY

17

**COURT MINUTES**

## U.S. MAGISTRATE JUDGE EDWIN G. TORRES - FORT LAUDERDALE, FLORIDA

DEFT: DAVID TOBIN (J)                          CASE NO: 04-60006-CR-COHN

AUSA: DIANA FERNANDEZ/BRIAN MC CORMICK    ATTY: _Ann Christian_ - ret'd

AGENT: _James Peterk_    VIOL _for Bonnie_ _Rose m_

PROCEEDING: INQ RE CNSL / PTD HEARING    RECOMMENDED BOND:   PTD
                     ARRAIGNMENT

BOND HEARING HELD - yes / no                  COUNSEL APPOINTED:

BOND SET @ _____                      To be cosigned by _____

❏   Do not violate any law                    _Hrt proceeded_

❏   Appear in court as directed               _by proffer_

❏   Surrender and / or do not obtain passports / travel    S/A Christopher Derricks - FBI
    documents

❏   Rpt to PTS as directed / or _____ x's a week/month    Continue for 6/26/22
    by phone, _____ x's a week/month in person

❏   Random urine testing by Pretrial Services _____
    Treatment as deemed necessary

❏   Maintain or seek full - time employment

❏   No contact with victims / witnesses

❏   No firearms                               _PTD Ordered_

❏   Curfew: _____

❏   Travel extended to: _____

❏   Halfway House _____

| NEXT COURT APPEARANCE: | DATE: | TIME: | JUDGE: | PLACE: |
|---|---|---|---|---|
| INQUIRY RE COUNSEL: | | | | |
| PTD/BOND HEARING: | | | | |
| PRELIM/ARRAIGN. OR REMOVAL: | | | | |
| STATUS CONFERENCE: | | | | |

DATE: 1/16/04   TIME: 10:00 A.M.   FTL BSS TAPE # 04 - _005_   Begin: _1212_   End: _157_

_end time: 1150_
_back at 12:40 end-ed_          _And 04-006_
                                _record 04-006 @ 3432_

**EXHIBIT 1**



FILED by __WC__ D.C.
ELECTRONIC

Jan 21 2004

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA · MIAMI

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 04-60006-Cr-Cohn/Torres**

UNITED STATES OF AMERICA,

     Plaintiff,

vs.

DAVID TOBIN, et al.

     Defendant(s).

_____/

**NOTICE OF APPEARANCE**
**AS CO-COUNSEL ON BEHALF OF DEFENDANT, DAVID TOBIN**

     **NOTICE IS HEREBY** given that Miguel de la O, Esq. of de la O & Marko has

been retained as co-counsel for Defendant, David Tobin, in the above-referenced

matter.  Please direct a copy of all pleadings, papers and/or inquiries to the

undersigned.

     Respectfully submitted,

     **DE LA O & MARKO**
     Attorneys for Defendant(s)
     3001 S.W. 3rd Avenue
     Miami, Florida 33129
     Telephone: (305) 285-2000
     Facsimile: (305) 285-5555

     By: _____ for
        **Miguel M. de la O**
        Florida Bar No. 0822700
        delao@delao-marko.com

de la O & Marko
3001 S.W. 3rd Avenue, Miami, Florida 33129

TELEPHONE 305/285-2000

FACSIMILE 305/285-5555

35/sp

**EXHIBIT 2**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was delivered by U.S. Mail and facsimile, this 21st day of January, 2004, to Samuel I. Burstyn, Esq., Counsel for Defendant, Samuel I. Burstyn, P.A., Suite 2600, One Biscayne Tower, 2 South Biscayne Boulevard, Miami, Florida 33131 (305) 373-6444 and to Diana Fernandez, Esq., Assistant United States Attorney, Office of the United States Attorney, 500 East Broward Boulevard, Suite 700, Ft. Lauderdale, Florida 33394.

Miguel M. de la O

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. _04-6002.6 CR CCHN_

UNITED STATES OF AMERICA          :

              v.                  :       NOTICE OF APPEARANCE OF D.C.
                                          FILED by _____
_DAVID Tobin_____ :             MAG. SEC.

                                          FEB 0 2 2004

                                          CLARENCE MADDOX
                                          CLERK U.S. DIST. CT.
     COMES NOW _SAMUEL I BURSTYN__, and files
his/her appearance as counsel for the above named defendant(s).
Counsel agrees to represent the defendant(s) for all proceedings
arising out of the transaction with which the defendant(s) is/are
presently charged in the United States District Court in and for
the Southern District of Florida.

     Counsel hereby states that his/her appearance is unconditional
and will conform to the requirements of Local General Rule 16.

     Counsel also acknowledges his/her responsibility to file a
timely notice of appeal to the Eleventh Circuit Court of Appeals on
the defendant's (s') behalf if requested to do so by the defendant(s).

     FEE DISPUTES BETWEEN COUNSEL AND CLIENT SHALL NOT AFFORD A
BASIS FOR WITHDRAWAL UNDER LOCAL GENERAL RULE 16.

DATED: _2-2-04_____          _____
                                  Attorney's Signature


          Name _SAMUEL I BURSTYN_____
          Address _ONE BISCAYNE TOWER____
                  _MIAMI_____
          Telephone _305 373 0444_____

**EXHIBIT 3**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

FILED BY: _____ D.C

2004 AUG -5 AM 10: 23

CLERK U.S DIST. CT
S D OF FL -FTL

CASE NO. 04-60006-CR-COHN/SNOW

UNITED STATES OF AMERICA,

v.

DAVID TOBIN, et al.

_____

## UNOPPOSED MOTION FOR SUBSTITUTION OF COUNSEL

Defendant, DAVID TOBIN, by and through undersigned counsel, respectfully moves this Honorable Court for an Order substituting SCOTT A. SREBNICK, ESQ., as counsel of record in place of SAMUEL I. BURSTYN, ESQ., in this matter. Undersigned counsel respectfully request that all future motions, notices, orders, pleadings, correspondence, and the like, in this case be sent to attorney Scott A. Srebnick, Esq., at the address noted below, and that attorney Samuel I. Burstyn, Esq., be relieved of any further obligations with respect to this case.

Undersigned counsel (Scott A. Srebnick) has conferred with AUSA Brian McCormick, who advises that the government does not oppose this motion.

Respectfully submitted,

SCOTT A. SREBNICK, ESQ.
(FL Bar #872910)
2400 South Dixie Highway, Suite 200
Miami, Florida 33133
Tele: (305) 285-9019
Fax: (305) 854-8782

SAMUEL I. BURSTYN, ESQ.
(FL Bar #217646)
2 South Biscayne Blvd., Suite 2600
Miami, Florida 33131
Tele: (305) 373-0444
Fax: (305) 373-6444

285
1F

**EXHIBIT 4**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was mailed, postage prepaid, to the following named addressees, this 4ᵗʰ day of August, 2004:

J. Brian McCormick, Esq.
Diana L. W. Fernandez, Esq.
Assistant U. S. Attorneys
U. S. Attorney's Office
500 E. Broward Blvd., 7ᵗʰ Floor
Ft. Lauderdale, FL 33301

Vincent J. Flynn, Esq.
1450 Brickell Bay Drive
Suite 602
Miami, FL 33131

Jayne C. Weintraub, Esq.
Steven M. Potolsky, Esq.
100 S.E. 2ⁿᵈ Street, Suite 3550
Miami, FL 33131

Howard M. Srebnick, Esq.
Black, Srebnick, Kornspan & Stumpf
201 So. Biscayne Blvd., Suite 1300
Miami, FL 33131

Kenneth J. Kukec, Esq.
2 South Biscayne Blvd., Suite 2600
Miami, FL 33131

Richard L. Rosenbaum, Esq.
350 E. Las Olas Blvd., Suite 1700
Ft. Lauderdale, FL 33301

Susan W. Van Dusen, Esq.
2701 South Bayshore Drive, Suite 315
Miami, FL 33133

Joaquin Mendez, Esq.
100 S.E. 2ⁿᵈ Street, Suite 2700
Miami, FL 33131

Robert N. Berube, Esq.
Federal Public Defender's Office
1 E. Broward Blvd., Suite 1100
Ft. Lauderdale, FL 33301

SCOTT A. SREBNICK, ESQ.

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 04-60006-CR-COHN/SNOW

UNITED STATES OF AMERICA,

v.

DAVID TOBIN, et al.

_____/

## ORDER GRANTING SUBSTITUTION OF COUNSEL

Upon the unopposed motion of Defendant, DAVID TOBIN, for substitution of counsel, it is hereby

ORDERED and ADJUDGED that the motion is hereby GRANTED. Attorney Scott A. Srebnick, Esq., shall substitute in as counsel of record for defendant, DAVID TOBIN. Attorney Samuel I. Burstyn, Esq., shall be relieved of all further duties in this matter.

DONE and ORDERED in Chambers, at Fort Lauderdale, Florida, this 6 day of August, 2004.

HONORABLE JAMES I. COHN
UNITED STATES DISTRICT JUDGE

cc:    All Counsel of Record

**EXHIBIT 5**